NEWARK MACH. Co. *v.* HARGETT and others.[1]

(*Circuit Court, D. Maryland.* July 15, 1886.)

1. PATENTS FOR INVENTIONS—SUBSTITUTION—PATENTABILITY.

Clover hullers having in combination an open upper cylinder and a closed lower cylinder being old, and it being also old to fasten spikes or rubbers upon the bars or lags of open cylinders from the inside, the court had serious doubts whether there was anything patentable in substituting an open cylinder, having its spikes or rubbers fastened upon the inside, for the closed lower cylinder in a clover-huller, the combined operation and function of the two cylinders remaining the same.

2. SAME—INFRINGEMENT.

The second claim of letters patent No. 188,064, to A. Miller, being for the combination in a clover-huller of an open upper cylinder with an open lower cylinder, is not infringed by a machine having its lower cylinder made of corrugated iron plates removably secured between the bars or lags, and forming, except when said plates are removed, a closed cylinder.

3. SAME—RESTRICTED CLAIM.

A restricted claim for rubbers (for clover-huller cylinders) having roughened sides and rounded front edges is not infringed by rubbers having beveled front edges of a blunt wedge shape.

4. SAME—PUBLIC USE AND SALE.

Where machines containing a particular feature have been manufactured for sale, and actually sold, and publicly used, for more than two years before an application for a patent for such feature, the latter becomes, as an independent device, public property, even though the machine on which it was so used may have been, as a whole, unsuccessful.

5. SAME—PUBLIC USE.

No one is entitled to a patent for a combination which has been in public use for more than two years, even though, by reason of superior mechanical construction, he may have been the first to obtain from its use the most successful results.

6. SAME—SEED-CLEANERS.

Letters patent No. 271,839, of February 6, 1883, to I. Grube, for seed-cleaner, considered, and *held,* that the first claim can only be supported when strictly construed, and not infringed; and that the second claim, if construed to cover the use of any seed-cleaner in combination with any thresher, is void.

In Equity.

*Wells W. Leggett, J. A. J. Creswell,* and *M. D. Leggett,* for complainant.

*Wood & Boyd,* for respondents.

BOND and MORRIS, JJ. Bill for injunction and damages for infringement of patents relating to clover-hulling machines. The Newark Machine Company, a corporation of Ohio, doing business at Co-

———————

[1] Edited by Charles C. Linthicum, Esq., of the Chicago bar.

lumbus, in that state, brings this suit against P. L. Hargett & Co., alleging that said firm is engaged in selling in Maryland clover-hulling machines, manufactured by Gaar, Scott & Co., at Richmond, Indiana, which infringe certain letters patent which are the property of the complainant. The patents alleged to be infringed are—*First*, No. 188,064, to A. Miller, March 6, 1877, for clover-hullers; *second*, No. 271,839, to I. Grube, February 6, 1883, for a seed-cleaner; and, *third*, No. 322,465, to A. Miller, July 21, 1885, for recleaner for grain and seed separators.

The Miller patent of 1877 (No. 188,064) has 11 claims, but only claims 2, 5, 6, 9, and 10 are involved in this controversy.

"(2) The combination is one machine of the open upper cylinder with the open lower cylinder, substantially as and for the purposes described."

It is conceded that it is old to make clover-hullers with an open upper cylinder, and with a closed lower cylinder, and the novelty in the Miller machine consisted in the discovery alleged to have been made by him that an open lower cylinder could be used. The advantage, and the only advantage, claimed for the open lower cylinder is the opportunity it affords, by its being open, for fastening the spikes or rubbers through the lags or bars of the cylinder with nuts screwed on from the interior,—a method of fastening which is more secure than wedging them in, and also allows the screws to be tightened up when the spikes or rubbers become loose, as they frequently do from use, or replaced if broken out. The fact is, however, that the infringing machine of the defendants does not exhibit an open lower cylinder, but one whose circumference between the bars or lags is made up of corrugated iron plates. These plates are removable, and when removed access can be had to the screws of the spikes as in any open cylinder. When defendants' lower cylinder is complete, as manufactured and intended to be used, there can be no question that it is a closed or drum cylinder, and not an open one, and therefore no infringement of the very narrow claim of the Miller patent. It only becomes an open cylinder when the iron plates are removed for the purpose of repairs. It is admitted that it was old to fasten spikes or rubbers upon the bars of open cylinders by screwing nuts on their shanks from the inside. It is admitted that it was old to construct a threshing cylinder with open bars, and with spikes or rubbers fastened upon the bars by nuts screwed upon the shanks of the spikes from the interior of the cylinder; and it is admitted that it was old to construct a clover-thresher with an upper and lower cylinder, the one being open and the other closed; and we have serious doubts if there was anything patentable in substituting an open cylinder for the one of the two which was closed, when the combined operation and function remained precisely the same; but, without deciding this point, it is sufficient that the lower cylinder of defendants is a closed and not an open cylinder, and is no infringement of the complainant's combination.

"(9) In combination with a hulling cylinder, the rubbers, *b*, *b* having roughened sides and rounded front edges, *h*, substantially as and for the purposes described."

It is conceded that rubbers with roughened sides, but with notched front edges, were old and in common use, and it is conceded the defendants' rubbers do not have rounded front edges, but have beveled front edges of a blunt wedge shape. If the complainant's form of rubber is indeed new and patentable, it is a claim which must receive a strict and narrow construction to support it at all, and must be confined to the form claimed. Confessedly, the defendants' form is different in not having the rounded front edge, and is not an infringement.

"(6) The raker bars, *d*, *d*, *d*, *d*, constructed in the form of an inverted T, substantially as and for the purpose described."

The testimony conclusively shows that more than two years before the application for the Miller patent of 1877 the complainants, or those whom they have succeeded in business, with Miller's consent, have made clover-hulling machines, using the inverted T-shaped raker bar in combination with a rake-bed substantially the same in shape and operation as that shown in the Miller patent of 1877. The size and shape of the rake-bed was somewhat varied, from year to year, in the effort to obtain more satisfactory results. It is now claimed that all these machines were unsuccessful,—merely experimental and not perfected machines. They were, however, manufactured for sale, and were actually sold, and publicly used. The inverted T-shaped raker-bar was precisely the one now claimed; and, having gone into public use, it became, as an independent device, common property, which any one could use in any combination which was not, as a combination, an infringement. Walker, Pat. §§ 94–96. There can, therefore, be no valid claim for the inverted T-shaped bar alone.

Claim 5. This claim is for the combination of the inverted T-shaped raker bar with the bed-bars, *c*, *c*, *c*, with beveled edges. We are satisfied from the evidence that substantially the same combination was used in the machines made and sold by the complainants more than two years before the application for the patent, and are satisfied, also, that the equivalents of both elements were used by others so as to defeat the novelty of this combination. The plaintiff is not entitled to a patent for a combination which had been in public use, even though, by reason of superior mechanical construction, they may have been the first to obtain from its use the most successful results.

*The Grube Patent.* The specifications of the Grube patent state that the essential feature of this invention consists in attaching, by proper belts and pulleys, a seed-cleaner to a grain-thresher, so as to have it receive the grain as it falls from the thresher, and so that the cleaner and thresher may be operated by the same motive power. The first claim is for the combination of devices constituting the seed-

cleaning machine, and the second claim is for the combination of the cleaner with a thresher. There is testimony tending to show that the seed-cleaning machine of itself was not new, but was a machine which, with various modifications of form and material, had been in common use. Without deciding whether it was patentable or not, enough conclusively appears to make it evident that the first claim can only be supported by a strict construction. One of the elements of the claim, viz., the agitating shaft in the hopper, is not used by the defendants, and it is quite obvious that the infringement is not made out. The second claim is for the combination of the seed-cleaner with and attached to the threshing-machine. The patentee describes no method of attaching and making the two operate together, but merely states that the cleaner is to be secured to the thresher by proper connections of belts and pulleys, operated' by the same motive power. If this claim is to be restricted to the use of the Grube seed-cleaner as one element of the combination, as we have already said, the defendants do not' use it. If the claim is construed to cover the use of any seed-cleaner in combination with any thresher, the claim cannot be sustained at all.

*The Miller Recleaner Patent of 1855.* The remaining patent alleged by complainants to have been infringed is the device patented to Miller, July 21, 1885, (No. 322,465.) This invention is an attachment to the thresher for recleaning the grain or seed, its object being to automatically return the tailings to the hopper of the recleaner as rapidly as the same pass from the shoe. With respect to this patent it is sufficient to say that the proof does not establish the fact —necessary to any recovery or relief—that the defendants made or sold or used any machine having this device attached, between the date of the patent, July 21, 1885, and the date of filing the bill of complaint, August 17, 1885.

The bill must be dismissed.